Vincent F. STRAWBRIDGE, Jr.,
and Rebecca S. Strawbridge,
Plaintiffs,

v.

SUGAR MOUNTAIN RESORT, INC.; B. Dale Stancil, Individually; the Sugar Mountain Irrevocable Trust; and the B. Dale Stancil Irrevocable Trust, Defendants.

No. CIV.1:02–CV–92.

United States District Court,
W.D. North Carolina,
Asheville Division.

Jan. 31, 2003.

**474**

R. Hayes Hofler, Daniel B. Hill, Hayes, Hofler & Associates, P.A., Durham, NC, for Plaintiffs.

Perry C. Henson, Jr., Amanda Mary Willis, Henson & Henson, LLP, Greensboro, NC, Robert E. Riddle, Asheville, NC, James R. Fox, Bell, Davis & Pitt, P.A., Winston–Salem, NC, for Defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the timely objections by Defendants B. Dale Stancil, The Sugar Mountain Irrevocable Trust, and The B. Dale Stancil Irrevocable Trust ("moving Defendants") to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr.[1] The moving Defendants have collectively filed objections, while Defendant Sugar Mountain Resort has filed an answer, but no motions. Under 28 U.S.C. § 636, Plaintiffs had ten days to file their own objections, but failed to do so. The undersigned is not required to give Plaintiffs additional time to respond to the moving Defendants' objections and no response from Plaintiffs is necessary.

Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred Defendants' motion for dismissal to the Magistrate Judge for a recommendation as to disposition. The Magistrate

---

1. The undersigned and the parties recognize that the moving Defendants' objections were filed one day late. The Plaintiffs have withdrawn their "Motion to Strike [Defendants'] Objections." The undersigned finds that the delay was the result of excusable neglect and will allow the Objections to proceed. *See* Fed.R.Civ.P. 6(b)(2).

Judge entered a detailed memorandum recommending that the moving Defendants' motion be granted if the Court found Plaintiffs asserted a substantive fraud claim and denied if the Court found Plaintiffs had asserted a derivative alter-ego claim. For the reasons stated below, the Court denies the moving Defendants' motion to dismiss and allows Plaintiffs 20 days to amend their complaint with respect to their fifth claim for relief.

## I. STANDARD OF REVIEW

▮ The district court conducts a *de novo* review of those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. *See* 28 U.S.C. § 636(b). This Court will not address general objections to the Magistrate Judge's final Recommendation. "A general objection ... has the same effect as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Howard v. Secretary of HHS,* 932 F.2d 505, 509 (6th Cir.1991). In this Circuit, *de novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). Those parts of a Magistrate Judge's Memorandum and Recommendation to which no specific objections are filed are given careful review. *Id.*

The moving Defendants filed four specific objections to the Magistrate Judge's Recommendation. **Moving Defendants' Objections to Recommended Decision ["Defendants' Objections"], filed October 29, 2002, at 3**. The Plaintiffs filed no objections to the Magistrate Judge's Recommendation. The Plaintiffs did, however, file a motion for "sufficient time to submit a response to moving defendants' objections." **Motion For Leave to With-draw So Much of Plaintiffs' Prior Motion to Strike Objections as Relate to Failure to Comply with Ten–Day Requirement, filed November 14, 2002, at 2**. The Plaintiffs, like the moving Defendants, had ten days to file any objections. They failed to do so. The undersigned is not required to give Plaintiffs additional time to respond to the moving Defendants' objections. *See* 28 U.S.C. § 636(b). Plaintiffs' motion is therefore denied. This Court will conduct a *de novo* review of the moving Defendants' specific objections.

## II. PROCEDURAL HISTORY AND STATEMENT OF FACTS

This case involves personal injuries sustained by the Plaintiff Vincent Strawbridge while skiing at the Sugar Mountain Resort in Banner Elk, North Carolina, on January 22, 1998. **Complaint, at 5**. Plaintiff Rebecca Strawbridge has filed a loss of consortium claim, stemming from Mr. Strawbridge's injuries. *Id.,* at 9.

This action was originally filed against only one Defendant, Sugar Mountain Resort, in state court in February 2000. **Memorandum in Support of Motion to Dismiss the Complaint as to Certain Defendants, filed July 1, 2002, at 1–2**. After extensive discovery, including depositions, Plaintiffs took a voluntary dismissal without prejudice in the state court proceeding on April 4, 2002. **Complaint, at 2–3**. On April 22, 2002, Plaintiffs refiled their action in this Court, exercising diversity jurisdiction. *Id.,* at 1. The new complaint added the three moving Defendants and two additional claims, as the fourth and fifth claims for relief. *Id.,* at 1, 14–22. The fourth claim for relief alleges that Sugar Mountain Resort is the alter ego of Defendant B. Dale Stancil and, therefore, Stancil and any of his interests in related trust entities should be held liable for any damages levied against Defendant Sugar

Mountain Resort. *Id.,* at 14. The fifth claim for relief alleges that Sugar Mountain Resort made numerous transfers of assets and income to the other Defendants in order to hinder or defraud creditors, in violation of the Uniform Fraudulent Transfer Act. *Id.,* at 21; *see also* N.C. Gen.Stat. § 39–23.1. Plaintiffs assert they first learned of the facts underlying these last two causes of action late in the discovery process of the state court proceeding. *Id.,* at 15.

## III. DISCUSSION

### A. Rule 9(b)

The moving Defendants' first specific objection to the Magistrate Judge's recommendation is that he failed "to properly apply rule 9(b) to the allegations of the Complaint, trying instead to rewrite pleadings that are defective as a matter of law." **Defendants' Objections, at 3.** Defendants are referring to the fourth claim in the complaint which alleges that Sugar Mountain Resort is the alter ego of Stancil. Defendants have interpreted this claim as a fraud claim. *Id.,* at 4–5. Plaintiffs counter that it is not a fraud claim, but rather a claim that the corporate form of Sugar Mountain Resort should be disregarded because Defendant Stancil and his two related trusts are "alter egos" of the corporation. Plaintiffs specifically allege that "Dale Stancil exercises actual control over Sugar Mountain Resort, operating the Resort as a mere instrumentality or tool .... " **Plaintiffs' Brief in Response to Defendants' Motion to Dismiss, filed July 29, 2002, at 7.**

▇▇▇ The undersigned finds that Plaintiffs' fourth claim for relief is not a claim for the tort of fraud. Rather, it is an attempt to pierce the corporate veil by showing that Sugar Mountain Resort is a mere instrumentality of the other Defendants. The purpose of piercing the corporate veil is to "prevent fraud or to achieve equity." *Glenn v. Wagner,* 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). Fraud, itself, is not required in order to pierce the corporate veil. *See Huski–Bilt, Inc. v. First–Citizens Bank & Trust Co.,* 271 N.C. 662, 670, 157 S.E.2d 352, 358 (1967) (**stating that fraud or "other wrong" will justify piercing the corporate veil**); *see also, State ex rel. Utilities Comm'n v. Nantahala Power & Light Co.,* 313 N.C. 614, 728, 332 S.E.2d 397, 464 (1985), *rev'd on other grounds,* 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986) (**citing cases where the court pierced the corporate veil without a fraud claim**). Piercing the corporate veil is an equitable claim that requires "a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege" to show that the corporation is a mere instrumentality of the individual or shareholders. *Glenn, supra,* at 458, 329 S.E.2d at 332. Because this claim is asking the Court to disregard the corporate entity and is not a claim specifically alleging fraud, the Magistrate Judge correctly applied the requirements of Rule 12(b)(6), rather than the heightened pleading requirements of Rule 9(b).

### B. Statute of Limitations

Moving Defendants' second objection to the Magistrate Judge's Memorandum and Recommendation is that it "fails to consider Moving Defendants' argument that matters of public record required Plaintiffs to assert any claims they had no later than January 22, 2001." **Defendants' Objections, at 3.** *In other words,* the moving Defendants are claiming that Plaintiffs' fourth claim for relief falls outside the statute of limitations.

All parties and the undersigned agree that the negligence claim and its accompanying loss of consortium claim are subject to the three year statute of limitations for

personal injury claims. N.C. Gen.Stat. §§ 1–52(16), 1–52(5); *see also, Sloan v. Miller Bldg. Corp.,* 128 N.C.App. 37, 40, 493 S.E.2d 460, 462 (1997). Moving Defendants argue that Plaintiffs' fourth claim for relief is an untimely fraud claim that was first filed in federal court more than three years after the accident resulting in the Plaintiff's injury. *See* N.C. Gen.Stat. § 1–52(9). They argue that Plaintiffs should have known the true owner of Sugar Mountain Resort by consulting readily available public records and, therefore, should have filed the fraud claim against the appropriate defendants in a timely manner. *See* **Defendants' Objections, at 8** (citing *Fulcher v. United States,* 696 F.2d 1073, 1077 (4th Cir.1982)).

Moving Defendants' argument fails, however, because the undersigned has found that the fourth claim for relief is not a claim for the tort of fraud. Rather, this claim is an allegation that the Sugar Mountain Resort is the mere instrumentality of the moving Defendants. As discussed above, this is not a separate claim for fraud and, therefore, the three year statute of limitations for fraud does not apply.

## C. North Carolina Rule 41

The moving Defendants' third objection is that the Magistrate Judge's Recommendation "failed to correctly apply North Carolina law on the question of whether the claims added qualify as 'derivative.'" *Id.,* at 3. Moving Defendants state that North Carolina Rule of Civil Procedure 41 does not apply to the fourth and fifth claims for relief and, therefore, these claims are time-barred. *Id.,* at 9–13.

The parties and the undersigned agree that North Carolina Rule 41, rather than Federal Rule of Civil Procedure 41, applies in this case. The present case was originally filed in state court, Plaintiffs took a voluntary dismissal, and then recommenced the case in federal court. In such circumstances, the North Carolina savings provision of Rule 41 will apply. *Porter v. Groat,* 713 F.Supp. 893, 896–97 (M.D.N.C. 1989) **(holding that federal courts have "long recognized" the applicability of the North Carolina savings provision to actions recommenced in federal court).**

■ Under North Carolina Rule 41, a plaintiff may dismiss his action, without prejudice, at any time before resting his case. Further, "[i]f an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal...." N.C. Gen.Stat. § 1A–1, Rule 41. This provision effectively extends the claim's statute of limitations by one year after a plaintiff takes a voluntary dismissal. *Whitehurst v. Virginia Dare Transp. Co., Inc.,* 19 N.C.App. 352, 198 S.E.2d 741 (1973). This rule, however, may not be used to manipulate the statute of limitations of claims that were already time-barred. *Staley v. Lingerfelt,* 134 N.C.App. 294, 298, 517 S.E.2d 392, 395 (1999) **(internal citation omitted)**; *see also, Shiloh Methodist Church v. Keever Heating & Cooling Co.,* 127 N.C.App. 619, 621, 492 S.E.2d 380, 381 (1997). Further, if a plaintiff chooses to recommence his case after taking a Rule 41 dismissal, the new action must be based upon the same claim as the previous action. *Brannock v. Brannock,* 135 N.C.App. 635, 639–40, 523 S.E.2d 110, 113 (1999); *see also, Cherokee Ins. Co. v. R/I, Inc.,* 97 N.C.App. 295, 297, 388 S.E.2d 239, 240 (1990) (noting that both claims must be "substantially the same, involving the same parties, the same cause of action, and the same right"). If the actions are "fundamentally different" then the new action is not considered a continuation of the first action and Rule 41 should not be

invoked. *Stanford v. Owens,* 76 N.C.App. 284, 289, 332 S.E.2d 730, 733 (1985).

In the current case, the Plaintiffs took a voluntary dismissal in state court on April 4, 2002. They recommenced their case in this Court on April 22, 2002, within the one year savings provision of Rule 41. Defendants' Objections, at 7. Their new complaint included two additional claims: one for piercing the corporate veil and one under the Uniform Fraudulent Claims Act. The issue, then, is whether Rule 41 applies to these two additional claims, thus making them timely.

 North Carolina courts have interpreted Rule 41 to apply to claims added to a recommenced complaint in limited circumstances. Claims for punitive damages, for instance, can be properly made for the first time in a recommenced complaint, filed within the one year savings provision, but after the original statute of limitations has expired. *Holley v. Hercules, Inc.,* 86 N.C.App. 624, 359 S.E.2d 47 (1987). In *Holley,* the North Carolina Court of Appeals reasoned that because the claim for punitive damages was not a claim that could stand alone, but rather, a derivative claim of the timely filed negligence claim, it could proceed. *Id.,* at 628, 359 S.E.2d at 50. Similarly, a loss of consortium claim, filed for the first time during the one year savings provision, can go forward, even if this first filing is outside of the original statute of limitations. *Sloan, supra.* A new loss of consortium claim will be allowed because this claim is not a separate cause of action and "must be joined with the other spouse's claim for personal injury." *Id.*

 The extent to which Rule 41 allows new claims, however, is limited. A fraud claim first filed during the one year savings period, but would otherwise be untimely, will not be allowed to proceed when the original claim was for negligent misrepresentation. *Stanford, supra.*

Fraud, unlike a claim for punitive damages or loss of consortium, is its own cause of action and is "fundamentally different from a claim for negligence." *Id.* The North Carolina Court of Appeals has also held that a string of additional claims, stemming from the original Section 1983 and loss of consortium claims, was not protected by Rule 41. *Staley,* 134 N.C.App. at 299, 517 S.E.2d at 396. The new claims included assault and battery, false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, trespass by a public officer and violations of the North Carolina Constitution. *Id.* The court reasoned that each of the new claims was independent, with its own set of required elements. Even though the new claims were based on the same facts as the original claims, the defendants were not given notice, within the applicable statute of limitations, that they would need to defend against these particular claims. *Id.* The Rule 41 savings provision, therefore, did not apply to these new claims and they were time-barred.

The new claims at issue here ask to pierce the corporate veil of the moving Defendants and allege that the moving Defendants have violated the Uniform Fraudulent Transfer Act. Each claim will be analyzed individually to determine whether it falls within the Rule 41 savings provision.

**(i) Piercing the Corporate Veil**

 Under North Carolina law, courts will disregard the corporate entity and hold an individual liable for the corporation's torts when an individual "exercises actual control over a corporation, operating [it] as a mere instrumentality or tool." *Postell v. B & D Constr. Co.,* 105 N.C.App. 1, 11, 411 S.E.2d 413, 419 (1992). The

"instrumentality rule" should be applied only in specific circumstances.

> [W]hen ... [a] corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.

*Henderson v. Security Mortgage & Finance Co.,* 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). The purpose of the instrumentality rule is to prevent a person from using "a corporation to their benefit and to the injury of a third party and then hide behind the protection of the corporate form." *Dassault Falcon Jet Corp. v. Oberflex Inc.,* 909 F.Supp. 345, 351 (M.D.N.C. 1995). Further, the Court will examine whether "the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation." *Glenn,* 313 N.C. at 458, 329 S.E.2d at 332. In such instances, the dominant corporation or shareholder will be held responsible for the liabilities of the subservient corporation. *Id.*

 Piercing the corporate veil, in general, is "a method of imposing liability on an underlying cause of action." *Shearson Lehman Hutton, Inc., v. Venners,* 165 F.3d 912 (table), 1998 WL 761505 at *2 (4th Cir.1998) (citing **William Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41, at 603 (perm ed. rev. vol.1990)**). Thus, piercing the corporate veil is derivative and is not an independent cause of action. *Thomas v. Peacock,* 39 F.3d 493, 499 (4th Cir.1994), *rev'd on other grounds,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996); *see also,*

***Fletcher Cyclopedia of the Law of Private Corporations, supra*** at § 41.28. While North Carolina state courts have yet to address the specific issue of whether a new claim for piercing the corporate veil is protected under Rule 41, other states have determined that the statute of limitations for such a claim is the same as the statute of limitations for the original suit. *See Matthews Constr. Co., Inc. v. Rosen,* 796 S.W.2d 692, (Tex.1990) (**holding that a suit against a corporation will toll the statute of limitations as to its alter ego**); *Hennessey's Tavern, Inc. v. American Air Filter Co., Inc.,* 204 Cal.App.3d 1351, 1359, 251 Cal.Rptr. 859 (1988) (**noting that an action may be brought against an alter ego defendant after the statute of limitations applicable to the cause of action alleged in the original complaint has expired**); *Townley v. Emerson Electric Co.,* 178 Misc.2d 740, 744, 681 N.Y.S.2d 741, 745 (1998) (**holding that a claim against an alter-ego of the original defendant can relate back to the date of the filing for statute of limitations purposes**). Further, the undersigned finds that a claim for piercing the corporate veil is analogous to a claim for punitive damages or loss of consortium. Each of these claims is dependant on proving an underlying claim. The undersigned finds that the claim for piercing the corporate veil is derivative of the negligence claim and, therefore, is protected by Rule 41. Its filing date relates back to the original filing date, making the current claim timely.

### (ii) Uniform Fraudulent Claims Act

 The Plaintiffs' fifth claim for relief is based on the Uniform Fraudulent Claims Act. *See* **Complaint, at 21.** The North Carolina Court of Appeals has held that a recommenced fraud claim will not be protected by Rule 41 when the original claim was for negligence. *See Stanford,* 76 N.C.App. at 289, 332 S.E.2d at 733. A

fraud claim has unique elements and, unlike a claim for punitive damages, is not dependant on the negligence claim. *Id.* The Plaintiffs' fifth claim is analogous to the common law tort of fraud. The undersigned finds, therefore, that it is not protected by Rule 41 and the critical date for statute of limitations purposes does not relate back to the filing date of the original claims.

## D. Fifth Claim For Relief

In addition to their objection based on Rule 41, moving Defendants' have objected that the Magistrate Judge failed to address their motion to dismiss the fifth claim for relief. *See* **Defendants' Objections, at 14.** Moving Defendants argue that the claim is time barred and does not state its allegations with specificity as required by Rule 9(b).

 While this claim is not protected by Rule 41, it could, nonetheless, be timely under the statute. *See* N.C. Gen.Stat. §§ 39–23.6, 39–23.9. Claims under the Uniform Fraudulent Transfer Act are governed by various statutes of limitations, determined by the subsection under which the suit was brought. N.C. Gen.Stat. § 39–23.9. The statutes of limitations range from one to four years. *Id.* In their complaint, the Plaintiffs have failed to specify under which subsection their claim is brought or the dates of the allegedly fraudulent transfers. Further, North Carolina courts have not yet determined whether claims under this statute need to be stated with particularity under Rule 9(b). Plaintiffs will be afforded 20 days to amend their complaint to clarify under which statute the claim is brought, the time period of the alleged fraudulent transfers, and to provide any other facts supporting this claim.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the moving Defendants' motion to dismiss is hereby **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the Plaintiffs have 20 days from entry of this Memorandum and Order in which to amend their complaint in accordance with this Order.